JOHN SHERMAN AND GEORGE C. SIMS v. THE CITY OF DES
MOINES, JOHN MACVICAR, Mayor, E. W. CREL-
LIN AND C. D. BOARDMAN, Appellants.

**Construction of Statute:** TERM OF OFFICE.   Acts Twenty-second Gen-
eral Assembly, chapter 1, provides, that in every city containing
thirty thousand inhabitants, a board of public works shall be
established, consisting of two members, to be appointed by the
mayor, one for a term of two, and the other for a term of three
years, to hold office until their successors are duly appointed and
qualified; that their successors shall be appointed for three years;
and that the mayor shall fill all "vacancies" in said board, by
appointment.   *Held*, that the terms of office began when the first
appointments were made, and ended, one in three, and the other
in two years, and the term of office of subsequent incumbents
terminated every three years, dating, respectively, from the ter-
mination of the term of the office of the original incumbents.

SAME: *Elective and appointive officers.*   Acts Twenty-third General
Assembly (March 13, 1890), for the extension of the limits of cer-
tain cities, provides (section 5), for elections biennially of "all
elective officers for terms and in manner provided by law for cit-
ies of the first class," that "said officers" shall qualify as provided
by law, and that the terms of office of "all officers in office prior to
said election, shall cease and determine upon the organization of
the new city council so elected"; and, by section 6, all acts and
parts of acts inconsistent with it are repealed.   *Held*, that the
provision that the terms of office of "all officers in office prior to
said election shall cease," etc., applies only to elective officers, and
not to appointive officers, whose appointment is authorized by
acts not inconsistent with it.

REPEAL BY IMPLICATION.   Acts Twenty-second General Assembly,
chapter 1, providing for the establishment of a board of public
works in cities containing over thirty thousand, was not repealed,
and boards of public works established thereunder abolished, by
Acts Twenty-third General Assembly (March 13, 1890), for the

6   extension of the limits of certain cities, (including those covered
    by previous acts), which provides for biennial elections on the
    first Monday in April, commencing in 1890, of elective officers.

*Appeal from Polk District Court.*—HON. W. F. CON-
RAD, Judge.

WEDNESDAY, DECEMBER 9, 1896.

MARCH 14, 1889, the office of the board of public
works of the defendant city, was filled by the appoint-
ment of M. H. King, for the term of three years, and
Martin Tuttle, for the term of two years.  The city
was organized under the annexation act in the spring
of 1890, and on April 21, 1890, King and Tuttle relin-
quished the office.  On the same day Robert S. Fink-
bine and R. L. Chase were appointed to said office,
there being no designation as to the extent of their
terms of office.  They entered the office and held it
until April 7, 1894, when Gen. Ed. Wright and John
Sherman were appointed to succeed them, there being
no designation as to their terms of office.  Doubt
having arisen in the mind of the then mayor, Isaac
L. Hillis, as to the terms of office of their predecessors,
he consulted counsel, who rendered an opinion,
whereupon, on April 27, 1894, the said mayor re-ap-
pointed said parties, in a written communication to
the council, wherein it was stated that General Wright
had agreed that his term should expire on the third
Monday of April, 1895, and that the term of John
Sherman should be for three years, commencing with
the third Monday in April, 1894.  Wright and Sher-
man continued to hold the office until the death of the
former, in December, 1895, when the mayor appointed
the defendant, George C. Sims, in place of the deceased.
The present mayor, who was elected in the spring of
1896, acting upon the assumption that the terms
of office of both Sherman and Sims had expired,

proceeded to appoint C. D. Boardman and Edward W. Crellin, the appellants, as a board of public works. A controversy having arisen as to the right of possession to the said office, between the then incumbents and the new appointees, and the latter, as is alleged, threatening to take forcible possession of the same, plaintiffs filed a bill in equity and obtained an injunction preventing appellants from taking possession of said office. Such further proceedings were had that the parties entered into a written stipulation that the petition filed in that action should be considered as an information in *quo warranto*, and that, upon the issues made by said petition and the answer thereto, his honor, Judge Conrad, should determine the question of the right of the parties to said office, upon its merits, and enter judgment accordingly, the judgment to have the same force and effect as if rendered in a *quo warranto* proceeding. The case was heard by Judge Conrad, who decided that the incumbents and appellees, Sherman and Sims, were rightfully in the possession of the office, and the injunction was made permanent until the expiration of their terms of office. The defendants appeal.—*Affirmed.*

*J. L. Myerly* and *Bishop, Bowen & Fleming* for appellants Boardman and Crellin.

*J. K. Macomber*, city attorney, for appellants City of Des Moines and John MacVicar, mayor.

*Cummins, Hewitt & Wright* for appellees.

KINNE, J.—I. This record presents but a single question for our determination, and that is, whether the incumbents and appellees, or the appellants, Boardman and Crellin, are entitled to the office in controversy. The claims of the parties may be

summarized thus: The incumbents claim: *First.* That the act creating the board of public works did not fix the time when the persons constituting such board should be appointed, or when their terms should expire; that no terms were created; that it provided that, when an appointment was made, it should be for three years, and until their successors were appointed; and, when a successor was appointed, either at the expiration of the three years or sooner, it must be for three years. *Second.* That the act of the legislature, known as the "Annexation Act," had no reference to the office or the officers of the board of public works, and in no manner affected the terms of office created in the original act. *Third.* If said annexation act did have reference to the board of public works, it affected the term of the officers of the board then in office, and in no manner referred to the term of office. Appellants Boardman and Crellin contend: *First.* That the act creating a board of public works also created fixed, definite terms of office; that by that act, one of the first appointees was to hold office for two years, and the other for three years, and, thereafter, each succeeding three years constituted a term of office. *Second.* That the annexation act terminated the terms of office of the board, and created new terms of the same duration as the old, and to commence with the third Monday of April, 1890, and at the expiration of each three years thereafter.

We shall not discuss all of these points of contention, but content ourselves with the consideration of the first two claims made by counsel for the incumbents, which, in view of the conclusion we have reached, will be decisive of the rights of these contending parties. The following are the statutory provisions touching the matter under discussion: Chapter 1, section 1, of the Acts of the

Twenty-second General Assembly, provides: "There shall be established and created in every city of the first class, having a population according to any legally authorized census of more than thirty thousand inhabitants, a board of public works, which shall consist of two members, residents of such city, to be appointed by the mayor, by and with the approval of the city council, on or before the first Monday of April, 1889. One member shall be appointed for the term of two years, and the other for the term of three years, and they shall hold their office until their successors are duly appointed and qualified, and their successors shall be appointed in the manner hereinbefore provided, for the term of three years. The mayor shall fill all vacancies occurring in said board by and with the approval of the city council, but no member of the city council or city officer shall be appointed a member of said board." March 13, 1890 the Twenty-third General Assembly passed what is known as the "Annexation Act," which provided for the enlargement of the corporate limits of certain cities, Des Moines being the only city to which it could apply. The fifth section of said act reads: "In all cities affected by this act, the regular municipal election shall be held on the first Monday in April, in the year 1890, and in each alternate year thereafter. At such election there shall be elected all elective officers for such terms and in such manner as is now provided by law for cities of the first class. Said officers shall qualify within the time and in the manner now provided by law, and the terms of office of all officers in office, prior to said first election in all such cities or towns, shall cease and determine upon the organization of the new city council so elected." Section 6 of the act provides that "all acts and parts of acts inconsistent with this act are hereby repealed." There is not, nor could there well be, any contention with

regard to the length of the term of office of a member
of the board of public works. It is three years. Did
the act creating the board of public works create a
fixed term? Most of the cases cited upon this ques-
tion are based upon acts reading differently from our
statute, and, hence, while to some extent elucidating
the questions, are not of controlling importance. We
shall not, therefore, give them special consideration.
Upon this question the learned district judge said:

"The first question to determine is, did the act of
the Twenty-second General Assembly create a term of
office for the board of public works? It is well set-
tled by the authorities that, where the law pro-
vides for the appointment of an officer to
discharge certain duties, and that he shall con-
tinue for a certain period, and his successors shall be
appointed for a like period, and does not fix definitely
the time for the beginning and ending, then he holds
from the date of appointment, or election, or qualifi-
cation, and his successor, whenever appointed, will be
appointed for a like time. This is well sustained by
the authorities cited by counsel for the old board,
Sherman and Sims. It is claimed for the old board
that they come within this rule. It is true that the
act does not fix any definite time for the appointment
of these officers in the first instance, nor when they
shall cease to act; but the act contains other provis-
ions, from which I think it clear that it was the inten-
tion of the legislature to establish fixed terms of
office, the terms to begin when the first appointments
were made, and to end, one in three years, and the
other in two years, from that time, and, thereafter,
each term to be for three years. The provisions
referred to, which seem to me decisive of this are, that
for obvious and potent reasons it was provided that,
after the terms of the first appointees, the succeeding
terms should begin at different times, it evidently

being the intention of the legislature that there should
be one remaining in office with the experience of one
or two years; and the other provision which clearly
points to the intent, is the provision that the mayor
shall fill all vacancies occurring in said board. The
statutes construed by the authorities cited by counsel
for the old board contain no such provisions, nor
their equivalent. In construing a statute, it is a rule
of construction to give force and effect to every part
of the statute, and in construing this statute, unless
the intention was to create a definite term of office
no force whatever can be given to the last sentence
of said section, which is: 'The mayor shall fill all
·vacancies occurring in said board by and with the
approval of the city council,' etc. There may be a
vacant office, but there can be no 'vacancy' in office
unless there is a term in which it may occur; and,
unless it was intended that there should be definite
terms, that language would have no force, for, with-
out that, whenever an officer ceased for any reason to
act, the appointment of his successor would be for the
time prescribed for the first appointee. So I conclude
that it was the intention of the legislature to estab-
lish definite terms of office for the board of public
works, and therefore the first position assumed by
counsel for the old board cannot be maintained. I
think this view is well sustained by the authorities
cited by counsel for the new board."  ·

We fully concur in the opinion of the district
judge upon this question.

II.   What was the effect of the annexation act,
heretofore quoted? Does the provision, "And the
terms of office of all officers in office prior to said first
election in all such cities or towns shall cease
and determine," apply to appointive as well as
elective officers? Are the provisions of this
annexation act inconsistent with those of the act

creating the board and fixing the terms of office, so as to work the repeal of that part of the original act? It seems to us clear that the annexation act in no way affected appointive officers. It may be conceded that, reading the one provision last quoted alone, it is, in terms, broad enough to embrace all offices, whether elective or appointive. We think, however, that there are obvious and cogent reasons why it should not be given such a construction. To give it that meaning, is to effect a repeal of a portion of the act creating the board of public works. This cannot be done unless the prior act is in this respect inconsistent with the annexation act. It should require an exceedingly strong showing of inconsistency in the provisions of the two acts to warrant us in depriving the municipality of the benefit of one of the most prominent and controlling provisions of the original act. We refer to that provision which requires the first appointment to be made of one commissioner for two years and the other for three years. The purpose of that requirement is obvious. The duties devolved by law upon this board were important. They virtually had charge of all public improvements made by the city, and these involved the expenditure of large sums of money, and the exercise of discretion and judgment. It will admit of no discussion that if, at all times, one member of this board had had experience in the important work intrusted to that body, it would be of great benefit to his associate and to the municipality. We look at that provision of the law as very important, and it should not be abrogated or held to be repealed unless the necessity for doing so is imperative. If, then, the two acts may be properly construed so as to preserve this excellent feature of the original act, it is clearly our duty to reach that result.

Again, what was the primary and principal object sought to be attained by the legislature in the passage

of the annexation act? At the time that act was passed, the then city of Des Moines was surrounded by numerous municipal corporations immediately adjoining it. Indeed, they were a part of it in every way, except that each possessed its own municipal government. It was desirable, from every point of view, that these several municipalities should all be embraced within one municipal corporation. Such was the chief object of the law. Nor does it appear from the act itself, that any change in the existing status of the old city or its officers was sought or intended to be made, save what was absolutely necessary for the accomplishment of the perfection of the new or extended corporation. There was, then, no necessity, growing out of the proposed reorganization of the city, for the legislature to interfere with the provision of the prior law, which gave to the city at all times the benefit of the services of one member of the board who had had experience in the discharge of the duties of the office. We readily concede, that the fact that there was nothing in the situation at the time of the passage of the annexation act, requiring interference with the manifest intent of the prior act, that the terms of both members of the board should not expire at the same time, can have no force as against a subsequent positive enactment, changing or abrogating the law in that respect. Where, however, the intent to repeal the old act does not clearly appear from the language used, or is not a necessary deduction therefrom, or in case the language used in the latter act will, without violence, admit of a construction which will preserve intact a desirable provision of the original act creating the board, it is proper to consider carefully the objects sought to be obtained by the general assembly in the enactment of both laws, and the necessity, if any, for abrogating a valuable provision of the original act in

order to effectuate the later legislative intent. There is no inconsistency in the provisions of the two acts. Turning to the section of the annexation act, it will be noticed that the only offices expressly mentioned there are elective offices. It provides that "at such election there shall be elected *all elective* officers for such terms and in such manner as now provided by law for cities of the first class." The next sentence is, "Said officers shall qualify within the time and in the manner now provided by law, and the terms of office of all officers in office prior to said first election in all such cities or towns shall cease and determined upon the organization of the new city council so elected." It is clear that every part of the section prior to the words "and the terms" refers to elective officers. After speaking of "elective officers," the very sentence which, it is claimed, terminated the terms of office of the board of public works starts out with the words, "said offices." There is no doubt that "said officers" referred to the "elective officers," before specifically mentioned in the same section. The last part of the section, we think, from its connection and punctuation, has the same meaning as if the word "said" had been inserted btween the words "all" and the word "officers" in the third line from the bottom of the page. The most natural construction of the language used is that the words "and the terms of office of all officers," etc., refer to those offices, and those only, which had, in the prior part of the section, been especially designated.

Again, the section makes provision for the qualification of elective officers, but makes none as to appointive officers. If, therefore, appellant's construction be correct, and by this annexation act the terms of appointive officers are abolished, then so much of the original act as created the terms of office of the

board of public works, and provided as to the qualifications of those appointed to serve as members of said board, would be repealed, and there would now be no board of public works. It is not apprehended that the legislature intended such a result, nor does the language of the act so provide, either expressly or by implication. The second sentence and the first part of the third sentence in section 5, of the annexation act, re-creates the terms of office of elective officers, and provides as to the qualification of such officers, and clothes them with the same authority as such officers possessed prior to the passage of the annexation act. So it may be said that the latter words of the section, as to the "terms of office of all officers" ceasing and being determined, must refer to those officers, only, theretofore referred to in the same section, and should not be held to embrace other officers whose terms, qualifications, and duties are otherwise provided for.

The conclusion we have reached renders it unnecessary to consider other questions argued. It follows that the decree of the district court was correct, and that the appellants are not entitled to hold the offices in controversy. The decree below is AFFIRMED.